# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 16-539V
(to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                              *
CARLENE SCHULTZ,                              *
                                              *
                    Petitioner,               *
                                              *
v.                                            *
                                              *
                                              *
SECRETARY OF HEALTH AND                       *
HUMAN SERVICES,                               *
                                              *
                    Respondent.               *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Chief Special Master Corcoran

Filed: October 9, 2019

Recusal; Interim Fees Decision; Improper Bias

*Andrew D. Downing*, Van Cott & Talamante, Phoenix, AZ, for Petitioner.

*Robert P. Coleman, III*, U.S. Dep't of Justice, Washington, D.C., for Respondent.

## ORDER DENYING MOTION FOR RECUSAL[1]

On May 2, 2016, Carlene Schultz filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2] alleging that she experienced an adverse reaction to the influenza vaccine she received on October 25, 2013, causing her to experience a stroke and/or spontaneous intracranial bleed. Pet. at 1–5 (ECF No. 1). An entitlement hearing took place on June 25, 2019, in Washington, D.C., and a decision in the matter is still pending.

---

[1] This Order will be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means that the Order will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Order's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Order will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Petitioner's recent request for an interim award of fees and costs has now occasioned a secondary dispute, culminating in a request that I recuse myself from this matter. For the reasons set forth below, I deny Petitioner's motion.

## Relevant Procedural History

Following the June 2019 hearing, Petitioner filed her second[3] interim fees request, seeking an award in excess of $110,000.00, which included attorney's fees, expert fees, and other costs associated with the hearing such as travel and lodging. Mot. for Interim Attorney's Fees & Costs, filed July 12, 2019 (ECF No. 68).

On August 15, 2019, I issued a decision granting in part and deferring in part Petitioner's interim request. *See generally* Decision (ECF No. 72) ("Second Interim Fees Dec."). First, I deferred awarding additional attorney's fees until the conclusion of the matter. I had already made a prior interim fees award of fees, rendering a second such award inappropriate in my estimation. *Id.* at 3. As noted in the Decision, my general practice in Vaccine Act cases is to allow only a *single* interim award, especially where (as here) there is the possibility that additional fees will be generated (either from an appeal of an entitlement decision deemed adverse by one of the parties, or in connection with any efforts to calculate damages if the claim succeeds). I therefore determined that all requests for outstanding and future attorney's fees would be deferred until a final judgment entered in this matter. *Id.*

Second, I awarded additional expert costs, and most of Petitioner's hearing-related travel charges, but reduced several expenses that I deemed to be unreasonably high or otherwise unsubstantiated. Second Interim Fees Dec., at 3–6.[4] In particular, I deemed the lodging costs incurred by Petitioner, her counsel, and her experts—whose room rates at the J.W. Marriott Hotel in downtown Washington, D.C., ranged from $685.87 to $775.91 per night—to be unreasonably high. Second Interim Fees Dec., at 4–5. Relying on several recent decisions from other special masters in which similarly high lodging costs were reduced, I compensated each hotel room at the lesser rate of $400.00 per night. *Id.* (citing *Van Vessem v. Sec'y of Health & Human Servs.*, No.

---

[3] Petitioner previously requested an interim fees award in January 2018 (approximately two and one-half years after the claim's filing). Mot. for Interim Fees, filed January 31, 2018 (ECF No. 37). I granted in part Petitioner's motion, awarding $59,306.29 ($33,183.50 in attorney's fees for work performed from August 2015 to January 2018, plus $29,222.79 in costs, including expert-related charges). Decision Granting Interim Award of Atty's Fees & Costs, filed Feb. 16, 2018, at 6 (ECF No. 41).

[4] Thus, I reduced payment for expert witness Dr. Laura Boylan's travel time to 50 percent of her usual rate, in keeping with common Vaccine Program practice. *Id.* at 3–4; *see, e.g.*, *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *17 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). For a second expert witness, Dr. Yehuda Shoenfeld, I awarded only $2,000.00 of the requested $5,480.00 of his travel expenses between Tel Aviv, Israel, and Washington, D.C., as Petitioner did not provide an itemized invoice establishing the basis for this cost. Second Interim Fees Dec., at 4–5. I also reduced the award for a first-class airplane ticket to an economy ticket price. *Id.* at 5.

11-132V, 2018 WL 3989517, at \*9 (Fed. Cl. Spec. Mstr. July 3, 2018) (reducing hotel cost award to $399 per night); *Reichert v. Sec'y of Health & Human Servs.*, No. 16-697V, 2018 WL 3989429, at \*4 (reducing hotel cost award to $420 per night); *Salmins v. Sec'y of Health & Human Servs.*, No. 11-140V, 2016 WL 806175, at \*4 (Fed. Cl. Spec. Mstr. Feb. 10, 2016) (reducing hotel cost award to $300 per night). In total, Petitioner received a second interim award of approximately $38,000.00. Second Interim Fees Dec., at 6.

On August 16, 2019, Petitioner filed a Motion for Reconsideration of my second interim fees decision. Mot. for Reconsideration, filed Aug. 16, 2019 (ECF No. 73). This motion lies at the heart of the present recusal request. Petitioner challenged my choice to defer a second attorney's fees award until a final judgment has entered in this matter, attacked the basis of certain of my cost reductions, and objected to my actions overall as unfair or violative of due process rights. *Id.* at 2–10.[5] With respect to those deductions pertaining to the hotel room rates and expert travel, however, counsel attempted to provide some of the substantiation that I had deemed absent from the second interim fees request. *Id.* at 9–10.

On August 28, 2019, I denied Petitioner's Motion for Reconsideration. *See generally* Order, filed Aug. 28, 2019 (ECF No. 74) ("Reconsideration Order"). In doing so, I acknowledged Petitioner's willingness to remedy her initial omissions, and stated that I would re-evaluate several components of Petitioner's second interim request, such as the hotel rate issue, at the end of the litigation (consistent with my deferral of a second award of attorney's fees). *Id.* at 7. However, I explained that such *ex post facto* attempts to rectify deficiencies in argument that could have been raised in the context of the interim fees request were not a valid legal basis for reconsideration. *Id.* at 5 (citing *Anthony v. Sec'y of Health & Human Servs.*, No. 14-680V, 2017 WL 521746, at \*3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017)); *see also Dominguez v. Sec'y of Health & Human Servs.*, 136 Fed. Cl. 779, 783–84 (2018); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992).

I also articulated the well-established principal that "special masters are empowered to make fees and costs reductions *sua sponte*, even if Respondent files nothing at all in response." Reconsideration Order, at 6 (citing *Spahn v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 252, 261 (2018); *Dominguez*, 136 Fed. Cl. at 784 (holding that special master has authority to reduce a fee award "even if the opposing party has not lodged an objection in support of the reduction"); *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208–09 (2009) (rejecting argument that *sua sponte* reductions deprive fee applicants of the ability to support their requests with

---

[5] Counsel deemed my policy of making only a single award of interim fees in a given case "about as arbitrary and capricious as a Decision can get," and indicated that he "would not have come to Washington DC and conducted the entitlement hearing if there was no expectation of timely payment for the work performed." *Id.* at 2. Counsel also demanded that "**if the Special Master unilaterally wishes to reduce our fees and costs by a single dollar, then we request a hearing. We deserve the right to know of the court's concern before being arbitrarily blindsided by a Decision like this.**" *Id.* at 4 (emphasis in original).

evidence); *Scharfenberger v. Sec'y of Health & Human Servs.*, 124 Fed. Cl. 225, 234 (2015).

On September 5, 2019, Petitioner interposed two more filings: a motion for review of my Order denying reconsideration, which is pending, along with the present recusal motion. Motion to Disqualify Special Master, Filed Sept. 5, 2019 (ECF No. 75). The basis for Petitioner's Motion for Recusal was "[t]he Special Master's handling of these issues and the language used in his recent Order." *Id.* at 2. Petitioner particularly argues that my denial of reconsideration, and certain language I used to describe the overall tone of her Motion for Reconsideration,[6] raises questions regarding my ability to be impartial and unbiased in resolving this matter.

Shortly thereafter, Respondent filed an opposition to the recusal motion, setting forth the standard for recusal and articulating why, in his view, recusal was not appropriate in this matter. Response to Motion to Disqualify Special Master, filed Sept. 12, 2019 (ECF No. 80). In doing so, Respondent emphasized that recusal is only appropriate where the source of the alleged bias is extrajudicial, or the alleged behavior rises to such a high level of favoritism or antagonism so as to make fair judgment impossible. *Id.* at 2 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). This was promptly met with Petitioner's Reply on September 17, 2019 in which Petitioner reiterated her earlier-voiced concerns. Reply to Response to Motion re Motion to Disqualify Special Master, filed Sept. 17, 2019 (ECF No. 81).

### Standards for Recusal

28 U.S.C. § 455 sets forth the standard and circumstances under which any federal justice, judge, or magistrate (and thus, by extension, a special master[7]) shall recuse him or herself. 28 U.S.C. § 455 (2017). In relevant part, the statute reads:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

---

[6] Petitioner specifically cites two lines of the Reconsideration Order, one of which appears in a footnote, as evidence of bias. The first reads "[a]ccordingly, Petitioner's surprise at the reduction (and my purportedly unexpected turn as 'inquisitor' in resolving the fees request) is wholly disingenuous." Order Denying Reconsideration, at 6. The second states: "I also note that the overall tone of the present reconsideration request was hysterical and unnecessarily rude, and did damage to counsel's prior reputation for professionalism in his Vaccine Program practice." *Id.* at 7 n.8.

[7] The issue of recusal is not addressed by the Vaccine Program Rules. In the absence of such guidance, "the special master or the [C]ourt may regulate the applicable practice, consistent with these rules and with the purpose of the Vaccine Act, to decide the case promptly and efficiently." Vaccine Rules of the United States Court of Federal Claims, Rule 1(b) (Fed. Cl. 2019). *See also Earles ex rel. Earles v. Sec'y of Health & Human Servs.*, No. 10-34V, 2011 WL 2006823, *1 (Fed. Cl. Spec. Mstr. Apr. 20, 2011) (explaining why a special master applied 28 U.S.C. §455 in deciding a motion for recusal). In the absence of a special master-specific statutory basis for recusal, and in light of prior decisions within the confines of the Vaccine Program on the subject, I find that Petitioner's Motion for Disqualification properly relies on Section 455.

(b)  He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding….

*Id.* at § 455(a)–(b). It is well-established that this statute is to be applied objectively. Recusal is required only "if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003) (citing *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996)).

Despite the statute's sweeping language, its application is not without limitation.[8] In *United States v. Grinnell Corp.*, 384 U.S. 563 (1966), the Supreme Court set forth the outlines of what would later be known as the extrajudicial source doctrine. In *Grinnell Corp.*, the defendants sought the disqualification of a district court judge under 28 U.S.C. § 144—the statutory basis for recusal of district court judges and counterpart to 28 U.S.C. § 455[9]—based on comments made during a series of pretrial conferences. *Id.* at 581–82. Ultimately, the Supreme Court ruled that "[t]he alleged bias and prejudice to be disqualifying must stem from an *extrajudicial source* and result in an opinion on the merits on some basis *other than what the judge learned from his participation in the case*." *Id.* at 583 (emphasis added) (citing *Berger v. United States*, 255 U.S. 22, 31 (1921)).

The applicability of the extrajudicial source doctrine was later extended to Section 455(a) by *Liteky v. United States*. 510 U.S. at 541. In *Liteky*, claimants moved to disqualify a district judge before whom they had appeared in a previous matter. *Id.* They argued that recusal was appropriate under 28 U.S.C. § 455(a) because "the judge had displayed 'impatience, disregard for the defense and animosity' towards [petitioners]" during the previous trial. *Id.* at 542. The district judge denied the motion for disqualification on the grounds that "matters arising from judicial proceedings were not a proper basis for recusal," and later denied it a second time. *Id.* at 543.

The claimants later appealed, claiming that the district judge's refusal to recuse himself violated 28 U.S.C. § 455(a). *Id.* The Eleventh Circuit affirmed the convictions, again relying on

---

[8] Indeed, adjudicators are tasked with a *duty* to sit, and "should recuse only for good and sufficient reasons, never to avoid a difficult task *or indulge a party.*" *See, e.g.*, *United States v. Jordan*, 678 Fed. Appx. 759, 768 (10th Cir. 2017) (emphasis added) (citing *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)).

[9] Section 144, which was codified in 1911, provides the original statutory basis for the recusal of district court judges generally. 28 U.S.C. § 144 (2017). Section 455, by contrast, originally provided for disqualification of a judge who shared an interest in the case over which he was presiding or a relationship to one of the parties. 28 U.S.C. § 455 (1970). In 1974, however, Section 455 was revised and effectively subsumed Section 144. *See Liteky*, 510 U.S. at 548. Today, the two sections are treated *pari materia*. *See generally In re IBM Corp.*, 618 F.2d 923, 928 (1980) (citations omitted) (agreeing with precedent that Section 144 and 455 should be construed in *pari materia* and that the test for recusal is the same under both sections).

the extrajudicial source doctrine. *Id.* In an opinion written by Justice Scalia, the Supreme Court found that the extrajudicial source doctrine applies to Section 455(a), and added that "judicial rulings *alone almost never constitute* a valid basis for a bias or partiality motion." *Id.* at 555 (emphasis added) (citing *Grinell Corp.*, 384 U.S. at 583). Expanding on the above, the Supreme Court added:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source, and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky*, 510 U.S. at 555 (emphasis added). The Court also defined certain expressions that do not rise to the level of favoritism or antagonism required to establish bias or partiality. Such expressions include those of "impatience, dissatisfaction, annoyance, and even anger." *Id.* at 555–56. Lastly, the Court explained that "judicial rulings, routine trial administration efforts, and ordinary admonishments" are inadequate grounds on which to support a motion for recusal. *Id.* at 556.

A few years after *Liteky*, the Federal Circuit addressed the issue of recusal under 28 U.S.C. § 455(a). *See Charron v. United States*, 200 F.3d 785, 787 (Fed. Cir. 1999). In *Charron*, the plaintiffs sought the recusal of the presiding judge in a Court of Federal Claim's proceeding based largely upon the judge's treatment of their counsel. *Charron,* 200 F 3d. at 788. To support their argument, the plaintiffs cited several instances where the judge accused the attorney of "malpractice, defrauding the court, filing frivolous action, and doctoring the record." *Id.* at 789. In reviewing the issue, the Federal Circuit noted that "[o]rdinarily an allegation of judicial bias relates to bias against a party. Although it is possible that judicial bias against the lawyer may become so pervasive and clear that the client's rights are likely to be affected." *Id.* at 788 (citing *Rosen v. Sugarman*, 357 F.2d 794, 798 (2d Cir. 1966)). However, the Federal Circuit found that "[t]he judicial comments and actions upon which the [plaintiffs] rely…merely reflect [the judge's] evaluation and criticism of [the attorney's] handling of the cases and her perception that his professional performance was severely deficient." *Charron*, 200 F.3d at 789. Thus, because (consistent with *Liteky*) the judge's opinions were formed within the confines of the litigation, the extrajudicial source doctrine was applied, and the denial of the plaintiffs' motion for recusal was affirmed. *Id.*

Motions seeking recusal of special masters are exceedingly rare. Of the limited number of cases in which recusal of a special master was sought, the overwhelming majority were found to be frivolous, meritless, or otherwise made in anticipation of, or retaliation for, unfavorable rulings. *See, e.g.*, *Byrd v. Sec'y of Health & Human Servs.*, No. 17-900V, slip op. (ECF No. 42) (Fed. Cl. Spec. Mstr. June 6, 2018), *mot. for review den'd*, 142 Fed. Cl. 79, 86 (2019) (denying petitioner's motion for recusal "because it lacks any factual or legal merit"); *Padmanabhan v. Sec'y of Health & Human Servs.*, No. 11-141V, slip op. at 2 (ECF No. 42) (Fed. Cl. Spec. Mstr. Sept. 26, 2013) (denying request for recusal where petitioners alleged that a special master's use of a literary reference in a previously decided, but unrelated, case evidenced prejudice against autism claims); *Earles v. Sec'y of Health & Human Servs.*, No. 10-34V, 2011 WL 1979609, *1 (Fed. Cl. Spec. Mstr. Apr. 22, 2011) (declining to grant petitioner's motion for recusal for lack of evidence to support allegations of hostility and animosity towards petitioner and finding that much of the complained of communications merely reflected the special master's efforts to manage her docket); *Doe v. Sec'y of Health & Human Servs.*, 2007 WL 2350645, *1 (Fed. Cl. Spec. Mstr. July 31, 2007) (denying petitioner's motion for recusal where petitioner cited the special master's comments during a Rule 5 status conference as the basis for recusal); *Wallace v. Sec'y of Health & Human Servs.*, No. 97-836V, 2005 WL 3132463, *1, *1 n.3 (Fed. Cl. Spec. Mstr. Oct. 28, 2005) (declining to grant petitioner's motion for recusal for a claim that was dismissed by one special master and later remanded to another following a successful motion for relief from judgment).


## ANALYSIS

Having considered the overall circumstances of the present matter, I do not find that recusal is warranted.

First, no evidence has been presented that I have ever previously demonstrated any specific bias against Petitioner or her counsel extraneous to the present case. I met Ms. Schultz in person for the first time in June 2019 at the entitlement hearing, and my review of the transcript of that proceeding reveals no instances in which I displayed any discourtesy to her personally, or animosity toward her claim. *See, e.g.*, Transcript of Proceedings, filed July 17, 2019 (ECF No. 70), at 223–24. In addition, Counsel has not established that I have demonstrated personal bias against him individually in any prior cases (win or lose).[10] I heard the parties' witnesses at the June 2019

---

[10] I have issued reasoned decisions in favor of entitlement in cases involving present counsel. *See, e.g.*, *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2017 WL 1713113, *1 (Fed. Cl. Spec. Mstr. Feb. 22, 2017) (finding that Petitioner had met her burden in establishing that the human papillomavirus vaccine caused her child to suffer an autoimmune encephalopathic event, and she was therefore entitled to compensation). I have also found that counsel should be paid for cases that were dismissed as unavailing, and over Respondent's objection that the claim lacked reasonable basis. *See, e.g.*, *Newport v. Sec'y of Health & Human Servs.*, No. 17-1897V, 2019 WL 1958682, *1 (Fed. Cl. Spec. Mstr. Mar. 12, 2019); *Allicock et al. v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, *1 (Fed. Cl. Spec. Mstr. May 26, 2016), *mot. for review den'd*, 128 Fed. Cl. 724 (2016). And I have issued many interim fees decisions in Counsel's favor. *See Gramza v. Sec'y of Health & Human Servs.*, No. 15-247V, 2017 WL

entitlement hearing, and am prepared to rule on the claim fairly and impartially (and without taking into account the present recusal dispute).

Second, Petitioner has not substantively demonstrated that my specific refusal to reconsider the second interim fees decision evidences impermissible bias. As a general matter, fees decisions, while understandably important to counsel, are not the *raison d'etre* for the Vaccine Program, and turn most often[11] on matters having no relationship to the underlying merits of a petitioner's claim. This is doubly true of *interim* fees and costs requests—a form of relief that is not specified in the Vaccine Act, and which can discretionarily be denied. *See McKeller v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 300 (2011) (citing *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008) for the proposition that "there is no presumption of entitlement to interim fees"). Petitioners and their counsel are also able to avail themselves of a motion for review if they think a fees decision was legally improper—as has been done here—but error in the decision is not itself evidence of bias.

Petitioner's recusal motion otherwise relies only on the language and substance of the Reconsideration Order to establish bias. But this too is no basis for recusal under the standard set forth in Section 455. The substance of the holding is not grounds for recusal, as the Supreme Court instructs. *Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Nor do individual statements contained therein and protested by Petitioner evince or reflect a deeply-held or long-standing bias against Petitioner or her counsel that would inhibit me from fairly deciding entitlement. Accordingly, the purported basis for recusal does not constitute the kind of extrajudicial evidence of bias contemplated in *Grinell Corp.* and *Liteky*. *See Grinell Corp.*, 384 U.S. at 583; *Liteky*, 510 U.S. at 555.

As a result, the present motion is not well founded, and is accordingly DENIED.

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

3574794, *1 (Fed. Cl. Spec. Mstr. June 28, 2017); *Reiling v. Sec'y of Health & Human Servs.*, No. 15-032V, 2016 WL 3910846, *1 (Fed. Cl. Spec. Mstr. June 24, 2016).

[11] Of course, in cases in which reasonable basis is raised as an objection to the continued litigation of a petition, fees generated in the prosecution of an objectively unreasonable claim risk nonpayment (and under such circumstances the special master's view of the claim would impinge on the fees to be awarded). But there are no such concerns in this case, which was recently litigated and which unquestionably in my estimation possesses reasonable basis.