

# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 16-539V
(Not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                                 \*

CARLENE SCHULTZ,               \*

                         \*         Chief Special Master Corcoran

         Petitioner,     \*

                         \*         Filed: March 25, 2020

v.                        \*

                         \*         Attorney's Fees and Costs;

                         \*         Final award; Lodging Costs.

SECRETARY OF HEALTH AND  \*
HUMAN SERVICES,        \*

                         \*

         Respondent.    \*

                         \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Andrew D. Downing*, Van Cott & Talamante, Phoenix, AZ, for Petitioner.

*Robert P. Coleman, III*, U.S. Dep't of Justice, Washington, D.C., for Respondent.

### DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On May 2, 2016, Carlene Schultz filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2] alleging that the influenza vaccine she received on October 25, 2013, caused her to experience a stroke and/or spontaneous intracranial bleed. Pet. at 1–5 (ECF No. 1). An entitlement hearing took place on June 25, 2019, in Washington, D.C., and I issued a decision denying entitlement to compensation on January 24, 2020. Entitlement Decision, filed Jan. 24, 2020 (ECF No. 90). That Decision was not appealed.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Petitioner has previously received fees and costs awards in this case. She first requested an interim award of attorney's fees and costs in January 2018, and at that time I awarded $59,306.29 for work performed on the matter between August 2015 and January 2018. Interim Fees Decision, dated Jan. 31, 2018 (ECF No. 37). Petitioner then submitted a second interim request in July 2019, a month after the entitlement hearing, seeking fees and costs mostly attributable to appearance at the hearing. Motion for Interim Attorney's Fees and Costs Following Entitlement Hearing, filed July 12, 2019 (ECF No. 68) ("Second Mot. for Interim Fees"). I subsequently issued a decision granting and deferring in part Petitioner's second request. Second Fees Decision, dated Aug. 15, 2019 (ECF No. 72). In sum, I awarded Petitioner $38,059.08 of the requested $48,309.60 in costs[3], but I deferred resolution of the $65,363.25 in requested fees, based on my practice of only permitting counsel a single interim fees award in most cases. *Id.* at 1.

On August 16, 2019, Petitioner filed a motion for reconsideration, particularly challenging my reductions to certain of her trial-related costs. Motion for Reconsideration, filed Aug. 16, 2019 (ECF No. 73). I denied the motion, but I indicated that I would allow Petitioner to revive that portion of her second interim award request in any final motion for attorney's fees and costs so long as further substantiation could be provided. Order, filed Aug. 28, 2019 (ECF No. 74). Petitioner has now filed a motion for a final award of attorney's fees and costs, seeking an award for all work performed in this case since January 2018 (including the fees I previously deferred ruling on), costs incurred since August 2019, and re-requesting the trial related costs raised in her reconsideration motion. Motion for Attorney's Fees and Costs, dated Feb. 5, 2020 (ECF No. 96) ("Final Fees App.").

As the pending motion indicates, Petitioner requests a final award of $98,592.34—$88,817.75 in attorney's fees, plus $9,774.59 in costs—for the work of two attorneys, Mr. Andrew Downing, esq. and Ms. Courtney Van Cott, esq., on hearing preparations, post-trial issues, including appeal, as well as the supportive work of two paralegals. Final Fees App. at 10–11; *see also* Ex. A, filed on Feb. 5, 2020 (ECF No. 96-1) at 7; Ex. B, filed on Feb. 5, 2020 (ECF No. 96-2) at 22–26. The costs requested include legal research charges and transcript order charges, as well as the previously unreimbursed travel costs requested in Petitioner's second interim fees and costs motion. Ex. A at 7; Ex. B at 22–26.[4] For Mr. Downing, Petitioner asks for a rate of $385 per hour for the entire 2018-2020 period[5]. Ex. A at 8; Ex. at 26. For Ms. Van Cott, Petitioner asks for

---

[3] I found that a reduction of $10,250.52 from travel costs was appropriate, as those costs were insufficiently substantiated and unjustifiably high. Second Fees Decision at 5–6.

[4] Petitioner did not file a General Order No. 9 Statement in connection with his fee application (and counsel does not request any costs personally incurred by Petitioner).

[5] Both Mr. Downing and Ms. Van Cott billed at a half rate while traveling when in-flight internet connections were available, but otherwise at their full rates. From the billing records submitted in this case, it is not clear what specific work was performed during the periods of travel when an internet connection was unavailable, but Mr. Downing—through informal communications—has indicated that the time was spent reviewing medical records and expert reports.

$205 per hour for work performed in 2018-2019 and a rate of $275 per hour for work performed in 2020. Ex. A at 8; Ex. B at 26. In addition, Petitioner seeks a rate of $135 per hour for work completed by two paralegals. Ex. A at 8; Ex. B at 26.

Respondent reacted to the fees request on February 17, 2020. *See* Response, dated Feb. 17, 2020 (ECF No. 97). He indicates in his Response that he is satisfied that the statutory requirements for an attorney's fees and costs award are met in this case but defers to my discretion the calculation of a proper amount to be awarded. *Id.* at 2–3.

## ANALYSIS[6]

### A. Petitioner's Claim had Reasonable Basis

Although it did not ultimately succeed, Petitioner's claim had sufficient objective basis to entitle her to a fee award under the applicable reasonable basis analysis. Claims that vaccines can cause stroke or brain hemorrhage are common enough in the Program to have facial credibility, and unlike some categories of claims (such as those alleging autism as the injury) have not been litigated enough to be categorically discredited. *See, e.g.*, *Sokol v. Sec'y of Health & Human Servs.*, No. 16-1631V, 2020 WL 553842 (Fed. Cl. Spec. Mstr. Jan. 9, 2020). The claim also was based on undisputed evidence of a stroke, and bulwarked by an expert opinion that was not frivolous or obviously poorly reasoned even if deemed not supported by sufficient reliable science to prevail. There was enough evidence in the record to support bringing the claim, and Respondent for his part does not otherwise contest reasonable basis. Accordingly, a final award of fees and costs in this matter is appropriate.

### B. The Requested Attorney Rates Are Reasonable

The attorneys practicing at Van Cott & Talamante, located in Phoenix, Arizona, have repeatedly been found to be "in-forum," and therefore are entitled to the forum rates utilized by the Office of Special Masters.[7] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *7 (Fed. Cl. Spec. Mstr. May 26, 2016) (citing additional cases in which I awarded in-forum rates to Mr. Downing and associates). Upon consideration, given the information proffered by Petitioner herein about Mr. Downing and Ms. Van Cott along with their overall experience, the quality of their work, and their reputation in the legal community, I find that the rates requested are reasonable for the work completed herein.

---

[6] My prior fees decisions in this case set forth the legal standards relevant to fees and costs requests, and therefore I do not include an extended discussion of them or repetition of the applicable caselaw.

[7] *See* Office of Special Masters Attorneys' Hourly Rate Fee Schedule: 2018-2020, https://www.uscfc.uscourts.gov/node/2914 (last visited on Mar. 24, 2020).

This includes the increase sought for Ms. Van Cott's work in 2020. Ms. Van Cott did not request an increased rate for her 2019 work on this matter, but the increase she now seeks for 2020 work is reasonable, consistent with her experience and the quality of her work in the Program, and is also a fair interval increase from what she might otherwise have received as an increase for 2019.

## C.  Adjustments to Petitioner's Prior Costs Award

Petitioner requests $9,774.59 in overall final costs. Final Fees App. at 10–11. This amount includes the cost of legal research charges, hearing transcript orders, and the previously unreimbursed travel costs from Petitioner's second interim fees and costs request. Ex. A at 7; Ex. B at 22–26. The costs associated with legal research and transcript orders are reasonable, thus I award them in full—an amount totaling $1,798.86. The unreimbursed travel expenses, however, require some discussion, in light of my previous rulings and the newly-offered evidence in support of those costs.

### 1.   Unreasonably High Hotel Rates

Petitioner seeks $3,995.73 in addition to the previously-awarded lodging costs at the JW Marriott in Washington, D.C. (located approximately 0.3 miles from the Court) associated with appearance at the June 2019 hearing. I had reimbursed such costs at an adjusted rate of $400/night, based on my determination that a lower rate was more reasonable. Final Fees App. at 8; Second Fees Decision at 5. Petitioner argues that the originally-requested rate (approximately $580/night) is in fact comparable to those of other hotels in the same proximity to the Court and is therefore reasonable. Final Fees App. at 3–8.

There remain two deficiencies in Petitioner's position on what constitutes a reasonable lodging rate for appearing at a Vaccine Act entitlement hearing in Washington, D.C. First, Petitioner's rate request seems in part to have arisen from a desire to stay close to the Court of Federal Claims. Fees App. at 3 (noting that "[i]t is Petitioner's position that lodging is unavailable *in close proximity to the Courthouse* and Office of Special Masters at that rate…Petitioner can demonstrate comparable hotels *all within the same proximity to the Courthouse*…") (emphasis added). While this desire is understandable, the Act does not envision, nor do any Vaccine Rules require, that parties stay in a hotel "within proximity to the Court"—while there *is* the requirement that costs be reasonable if they are to be reimbursed. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992); *Presault v. Sec'y of Health & Human Servs.*, 52 Fed. Cl. 667, 670 (2002). It otherwise does not appear that Petitioner's rate request takes into account the availability of a lower rate ($400 or less) amongst numerous hotels within a one-mile radius of the Court, as my own informal analysis reveals was likely available at the time of hearing.[8]

---

[8] *See, e.g.*, The Dupont Circle Hotel Rates for June 2020, https://www.doylecollection.com/hotels/the-dupont-circle-hotel/book?is_dc_result=true&StartDate=2020-06-22&EndDate=2020-06-

Second, as is evidenced by the newly submitted documentation in support of the requested hotel rates, it appears that Petitioner's counsel only booked the rooms at the higher rate requested close in time to the hearing. But booking a hotel so late in the process will invariably result in substantially higher rates than if the same hotel room had been booked more than three weeks in advance. *Compare* Ex. C (noting a booking date of May 20, 2019 at a rate of $584.52/night), *with* JW Marriott Hotel Rates for June 2020, https://www.marriott.com/reservation/rateListMenu.mi?defaultTab=standard (last visited Mar. 23, 2020) (indicating that a room in June 2020 would be charged at a rate of $459/night if booked in March 2020). Accordingly, the higher rate that Petitioner incurred is somewhat attributable to dilatory action rather than market forces beyond her counsel's control.

As previously discussed, it is well established that special masters have wide discretion in determining whether litigation costs are reasonable and therefore eligible for reimbursement. *Perreira*, 27 Fed. Cl. at 34. This is also true of *sua sponte* reductions to hotel rates where substantiating documentation is not provided with the initial request, as was the case here. *See Pickens v. Sec'y of Health & Human Servs.*, 2020 WL 414442, at \*4 (Fed. Cl. Jan. 9, 2020). While I continue to find the requested rates to be somewhat unjustified, the additional substantiating documents filed in support of Petitioner's position provide *some* support for her contention that the JW Marriott offered the lowest rates under the circumstances. Final Fees App. at 5.

Based upon all of the above, and in an effort to close out this issue along with the rest of the matter, I will award *half* of the requested amount pertaining to lodging—a total of $1,997.87. I emphasize that in the future, counsel should take greater care in securing a reasonable hotel rate for D.C.-based hearings.

2.    Reimbursement for Conference Room Rental

Petitioner also seeks $500.00 reflecting expenses associated with a conference room that was used by the attorneys and witnesses for hearing preparations. Final Fees App. at 8–9. The charge was not reimbursed along with the second interim fees request because no explanation for the charge had been provided. Second Fees Decision at 5. Subsequent documentation and explanation, however, is sufficient to now reimburse the $500.00 associated with the rental of the conference room. Counsel is again admonished to provide *all* substantiating documentation at the time the request for fees and costs is made. A second "bite at the apple" will not be permitted as a matter of right.

---

24&RoomsCount=1&AdultsCount%5B0%5D=1&AdultsCount%5B1%5D=2&AdultsCount%5B2%5D=2&AdultsCount%5B3%5D=2&ChildrenCount%5B0%5D=0&ChildrenCount%5B1%5D=0&ChildrenCount%5B2%5D=0&ChildrenCount%5B3%5D=0&PromoType=&PromoCode=&clear_session=1 (last visited Mar. 23, 2020) (indicating that rates for a room at this hotel, which is located about one mile from the Court and within walking distance of the metro rail system, would be charged at a rate of $373/night).

3.      Disputed Airfare Costs

Petitioner also seeks $3,480.00 (in addition to the previously awarded $2,000.00) for the June 2019 round-trip airfare of her expert, Dr. Yehuda Shoenfeld, between Tel Aviv, Israel and Washington, D.C. Final Fees App. At 10; Second Fees Decision at 5; Ex. B at 23, 39. In her second interim fees request, the only substantiating documentation relating to such airfare costs provided was evidence of a wire transfer in the amount of $5,480.00 to Ophir Tours Ltd. Ex. B at 39. This was later supplemented by an invoice from Ophir Tours dated June 10, 2019 in the same amount. Ophir Tours Invoice, filed as Ex. I on Feb. 5, 2020 (ECF No. 96-9). Petitioner has therefore, at a minimum, provided a better explanation that this cost was in fact incurred.

It remains unresolved, however, whether such an airfare cost was *reasonable.* An online search indicates that the average cost of this Israel-to-U.S. flight is generally between $770.00 and $1,579.00 if booked sufficiently in advance.[9] No explanation is given for why Dr. Shoenfeld's flight costs up to *seven times* more than similar flights, though this may be the result of booking the flight about a week and a half prior to the hearing (as the substantiation for this cost suggests). *See* Ex. I. And Petitioner offered no other persuasive reason for blanket acceptance of this cost.[10] Because the amount of the original award exceeded what appear to be more reasonable available rates for such travel, no additional costs will be awarded for Dr. Shoenfeld's airfare in this matter.

**D. Adjustments for Attorney Time Spent on Unnecessary Motions Practice**[11]

---

[9] I have also previously found that Dr. Shoenfeld's airfare, when booked through Ophir Tours, was unreasonably high and not sufficiently substantiated when compared to other available flight offerings. *See, e.g.*, *Otto v. Sec'y of Health & Human Servs.*, No. 16-1144V, 2020 WL 1304189, at *4 (Fed. Cl. Spec. Mstr. Feb. 10, 2020); *see* Flights from Tel Aviv, Israel to Washington, D.C., https://www.kayak.com/flights/TLV,SDV-WAS/2020-06-23/2020-06-26?sort=bestflight_a (last visited Mar. 23, 2020).

[10] Counsel did also attempt to substantiate this cost by providing evidence of his son's recent study abroad flight to Spain in January 2020. Final Fees App. at 10; Flight Confirmation to Madrid, filed as Ex. J on Feb. 5, 2020 (ECF No. 96-10). Such a comparison is facially inadequate, however.

[11] Other than the adjustments set forth below, I am awarding all other attorney time requested herein—including the deferred time incurred at the June 2019 hearing. I am also awarding travel time as billed. I note, however, that awards for attorney's fees during periods of travel may only be compensated if proper documentation is submitted to substantiate the work performed during that period. *See, e.g.*, *Gramza v. Sec'y of Health & Human Servs.*, No. 15-247V, 2017 WL 3574794, at *4 (citing *Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 791 (2010) (reducing Mr. Downing's and Ms. Van Cott's fees for failure to substantiate what work was performed while traveling). In this matter, Mr. Downing has indicated through informal communications to Chambers that the period of travel during which both he and Ms. Van Cott billed at their full rates was spent reviewing documents in preparation for the June 2019 entitlement hearing. While I find this sufficient substantiation (but just barely) and thus find no further reductions necessary, I emphasize that this *ex post facto* substantiation via e-mail communications will not suffice in future matters. Rather, Counsel shall be required to provide billing records documenting specific tasks performed during periods of travel—just as is required for periods not spent traveling—if they wish to receive awards at the full rate.

Although I have opted to grant fees and costs in this case despite the fact that it was unsuccessful, it is worth emphasizing that such awards are *not* a matter of right. *See Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2012 WL 1203361, at *3 (Fed. Cl. Spec. Mstr. Feb. 12, 2012). Special masters possess wide discretion in determining whether a claim was filed with good faith and maintained in reasonable basis at all stages of the litigation. *See Phillips ex rel. Phillips v. Sec'y of Dep't of Health & Human Servs.*, 988 F.2d 111, 113 (Fed. Cir. 1993) (discussing the Vaccine Act's allowance for the reimbursement of attorney's fees and costs where a special master concludes that the underlying petition was brought in good faith and there was a reasonable basis for the claim); *see also Broekelschen*, 2012 WL 1203361 at *4 (indicating that "[r]easonable basis is also needed at each stage of the case").

This discretion is appropriately exercised in connection with fees devoted to unnecessary matters—even within the context of a case that otherwise has reasonable basis in terms of the underlying claim. Thus, motions that merely challenge the amount of an award, for example, without evidence of a special master's clear abuse of discretion, or that fail to identify a critical finding made by the special master properly subject to review/reversal may be deemed frivolous. *See Broekelschen*, 2012 WL 1203361, at *6 ("[m]otions for review that in substance challenge only the amount of the award should be reserved for those cases in which the special master clearly abuses his (or her) discretion"); *Jordan v. Sec'y of Dep't of Health & Human Servs.*, 38 Fed. Cl. 148, 154 (1993) (holding that the petitioner's motion for review was "irrelevant and, thus, frivolous" because it did not challenge a critical finding by the special master).

In addition, the Federal Circuit has held that an attorney's duty to provide zealous advocacy on behalf of their client does not relieve them of their duty to the tribunal to avoid frivolous litigation. *Gallagher v. Sec'y of Health & Human Servs.*, No. 95-191V, 2002 WL 1488759, at *1 (citing *Perreira*, 33 F.3d at 1377). The Court of Federal Claims has deemed the filing of frivolous motions or appeals *per se* unreasonable under the Vaccine Act. *Morse v. Sec'y of Health & Human Servs.*, 93 Fed. Cl. 780, 789 (2010); *see also Broekelschen*, 2012 WL 1203361, at *5 (instructing special masters to consider whether any arguments presented in a motion for review have reasonable basis in order to determine whether attorney's fees should be awarded for time expended in preparing the motion). Thus, the requirement that attorney's fees be reasonable serves as a bar against recovery of fees incurred by the filing of frivolous motions and appeals. *Morse*, 93 Fed. Cl. at 789.

The present motion seeks fees incurred in connection with motions practice from the summer of 2019 that proved wholly unnecessary and distracted from the disposition of the claim's merits. On September 5, 2019, Petitioner filed *both* a motion for review of the second interim fees decision, as well a motion for recusal. Motion for Review, filed Sept. 5, 2019 (ECF No. 76) ("Mot. for Rev."); Motion to Disqualify Special Master, filed Sept. 5, 2019 (ECF No. 75) ("Mot. to Disqualify"). Of the final requested award for attorney's fees, $14,238.50 was incurred during the

preparation and filing of these two motions. Ex. A at 1–6. I find, however, that the time devoted to these motions was unreasonable, and should therefore be reduced.

First, the motion challenging my disposition of the second interim fees and costs request (including my denial of reconsideration) reflected unreasonably-incurred time. There is no absolute right to an award of interim attorney's fees under the Vaccine Act. *See Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (2008). Rather, special masters hold broad discretion in determining whether an interim award is appropriate. *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (noting that *Avera* "leav[es] the special master broad *discretion* to consider many factors in considering whether an interim award is appropriate in a particular case") (emphasis in original).

Thus, attorney time was spent in an effort to challenge a determination that was extremely unlikely to succeed (especially in light of the fact that I only *deferred* fees to the end of this matter—and also expressed the willingness to revisit certain of my cost determinations at that time). Indeed, Petitioner also seems to have recognized the low probability of success this effort faced, since counsel opted to withdraw the motion. *See* Unopposed Motion to Dismiss Mot. for Rev., filed Jan. 1, 2020 (ECF No. 91).[12] The fees that were incurred in this unnecessary motion for review should not be reimbursed.

I reach the same conclusion with respect to time incurred on Petitioner's motion for recusal, which was filed simultaneously with Petitioner's motion for review on September 5, 2019. That motion did not provide any evidence of bias extraneous to this case as is required under the applicable standards of recusal. Order Denying Mot. to Disqualify, filed Oct. 9, 2019 (ECF No. 83); *Liteky v. United States*, 510 U.S. 540, 555 (1994) (discussing the extrajudicial source doctrine). Rather, it seems to have been motivated by displeasure with my refusal to reconsider aspects of my second interim fees award decision (along with comments made therein), and did not otherwise acknowledge legal precedent and persuasive statutory interpretations offered by previous decisions or offer evidentiary substantiation for my purported bias. Time was devoted to resolution of the motion that could otherwise have permitted attention to the far more meritorious Vaccine Act claim.

In light of the above, I reduce the requested fee amount of $14,238.50 for work related to the filing of Petitioner's motion for review and motion for recusal by fifty percent, resulting in a total amount of $81,698.50 in attorney's fees to be awarded in this matter, and allowing only $7,119.25 to be awarded for these two motions. To the extent that this appears a penalty, I note (in

---

[12] The choice to withdraw the motion for review may also have been inspired by counsel's concurrent lack of success in challenging a similar costs issue at the same time. *See Pickens*, 2020 WL 414442, at *4 (finding that the special master's decision to reduce hotel costs to $400/night was not an abuse of discretion, arbitrary, capricious, or contrary to law in the absence of substantiating documentation for the costs when the fees and costs application was initially filed).

addition to the aforementioned discussion about only awarding reasonably-incurred fees in any given case) that the Federal Circuit has suggested that this is about the sole sanctions power special masters possess when dealing with attorney conduct. *See, e.g.*, *Moczek v. Sec'y of Health & Human Servs.*, 776 Fed. Appx. 671 (2019). There, the Federal Circuit reversed the complete dismissal of a case due to attorney conduct (the repeated failure to adhere to deadlines—*including* the deadline to seek review of dismissal itself), reasoning that this was unfair to the petitioner in light of the Vaccine Program's remedial goals. *Id.* at 674. Yet the Circuit did *not* suggest that the attorney's conduct was otherwise acceptable—*or* that special masters could not find some other means of punitive redress. *Id.* ("we find that dismissal of the petitioner's case here, *as opposed to some lesser sanction . . .*") (emphasis added). Clearly, one reasonably-wielded "lesser sanction" is the discretion of a special master to reduce or eliminate fees and costs awarded in the face of attorney conduct warranting response. Counsel should expect an even greater reduction in the future if he again opts to file similar motions lacking in legal or factual substantiation.

### CONCLUSION

I hereby GRANT IN PART Petitioner's motion for attorney's fees and costs. An award of **$85,995.23** (representing $81,698.50 in attorney's fees, plus $4,296.73 in costs) shall be made in the form of a check payable jointly to Petitioner and Petitioner's counsel, Mr. Andrew Downing, esq. The total amount awarded above is based on the rates below:

| | **Rate** | **No. of Hours** | **Total Requested:** |
|---|---|---|---|
| Andrew Downing, esq. | $385.00 | 141.6 | $54,516.00 |
| Andrew Downing, esq. | $192.50 | 10 | $1,925.00 |
| Courtney Van Cott, esq. | $205.00 | 106.9 | $21,914.50 |
| Courtney Van Cott, esq. | $102.50 | 9.9 | $1,014.75 |
| Courtney Van Cott, esq. | $275.00 | 2.2 | $605.00 |
| Paralegal | $135.00 | 65.5 | $8,842.50 |

|  | Requested | Awarded | Difference |
|---|---|---|---|
| **Attorney's Fees:** | $88,817.75 | $81,698.50 | $7,119.25 |
| **Costs:** | $9,774.59 | $4,296.73 | $5,477.86 |
|  |  |  |  |
| **Total:** | $98,592.34 | **$85,995.23** | $12,597.11 |

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[13]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment it (jointly or separately) they file notices renouncing their right to seek review.